```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS


JOSE F. SANTOS and              )
MARIA SANTOS,                   )
        Plaintiffs,             )
                                )
                   v.           )  C.A. No. 12-cv-30060-MAP
                                )
PREFERRED MUTUAL INSURANCE      )
COMPANY,                        )
        Defendant.              )
```

### MEMORANDUM AND ORDER REGARDING
### DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT
### AND DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT
### (Dkt. Nos. 41 & 44)

May 12, 2014

PONSOR, U.S.D.J.

I. INTRODUCTION

Plaintiffs, Jose and Maria Santos, have brought suit under Mass. Gen. Laws ch. 93A against their insurer, Defendant Preferred Mutual Insurance Company. Plaintiffs also assert claims for breach of contract and breach of the implied covenant of good faith and fair dealing. These allegations stem from Defendant's treatment of Plaintiffs following a 2011 oil tank explosion in their basement.

The pending summary judgment motions focus on a narrow question: Have Plaintiffs satisfied the conditions precedent to filing suit? Defendant contends that it is entitled to

judgment in its favor because Plaintiffs failed to refer the matter to an independent board of referees and because they initially failed to attend an examination under oath. However, because Defendant ultimately waived the former requirement and because Plaintiffs did ultimately sit for an examination under oath, the court will deny Defendant's Second Motion for Summary Judgment (Dkt. No. 41), as well as Defendant's Supplemental Motion for Summary Judgment (Dkt. No. 44).

## II. BACKGROUND[1]

### A. The Parties and the Policy

Plaintiffs, Jose and Maria Santos, a married couple, owned a home together in Ludlow, Massachusetts. Defendant, a mutual insurance company organized in and operating out of New York, insured Plaintiffs' residence beginning in 2007. The relevant policy for this litigation, policy No. PHO0100761814, covered Plaintiffs for the period of November 1, 2011, to November 1, 2012.

The policy, in addition to its substantive provisions, contained a number of procedural requirements in the event of a claim. Two are relevant. First, a claimant, upon request of the insurer, was required to "submit to an

---

[1] Unless otherwise noted, the facts are drawn from the parties' submissions and the exhibits referenced therein. (Dkt. Nos. 41, 42, 44, & 45.)

examination under oath in matters connected with the loss or claim." (Policy, Dkt. No. 41, Ex. 2.)  Second, the policy stated, "If there is a disagreement as to the dollar amount of the loss . . . [t]he dispute will be referred to a three member board of referees.  Their decision as to the amount of loss will be binding."  (<u>Id.</u>)  The policy precluded suit against Defendant unless "all the terms of th[e] policy have been complied with."  (<u>Id.</u>)

B.  <u>The Explosion and the Immediate Aftermath</u>

On November 3, 2011, Alves Fuels delivered heating oil to Plaintiffs' home.  Shortly after the delivery, Mrs. Santos was doing laundry in her basement when the oil tank exploded.  The explosion spewed oil into the air, onto the floor, on a number of personal items, and covered Mrs. Santos.  The oil quickly spread throughout the basement.

Mr. Santos immediately called 911, and the Ludlow police and fire departments responded.  Mr. Santos then called Joe Salvador, owner of Alves Fuels, and Western Mass Environmental, LLC ("WME"), to assist with the oil spill. Around 11:00 a.m., WME arrived with a vacuum truck and began to suction the oil out of the basement.  It also removed sections of the structure of the home and personal property that had been soaked in oil.  In total, WME removed nine barrels of oily material and personal property.  They then

installed a ventilation system in the residence in an attempt to address a significant air quality problem.

C.  <u>Plaintiffs' Dealings with Defendant</u>

On the day after the explosion, Mr. Santos notified Defendant of the incident by reporting it to one of Defendant's local agents, Connie Doughty of Your Choice Insurance.  Doughty informed Mr. Santos that his insurance would cover the costs for lodging, food, and other relevant expenses incurred as a result of the accident.  Relying on that, Plaintiffs temporarily moved to the Quality Inn & Suites in Ludlow.

During the following week, Doughty arranged for Plaintiffs to meet another representative of Defendant, Wade Loud of LaMarche Associates, to discuss the accident.  Loud and Doughty instructed Plaintiffs to prepare and submit a list of items that had been damaged by the spill.  The two agents also accompanied Plaintiffs to the residence to inspect the damage.  They left Plaintiffs with the impression that Defendant would fully compensate them for the accident.

On November 12, 2011, Plaintiffs, having received nothing from their insurance carrier and being unable to afford the hotel any longer, moved back into their residence.  They provided Loud with documentation of the expenses for the lodging, along with a list of the personal

property damaged.

Subsequently, Loud, on behalf of Defendant, informed Alves Fuel that Defendant would provide coverage and assume responsibility. Defendant also retained Tighe and Bond of Westfield Massachusetts to study the contamination of the residence. Tighe and Bond removed samples of the basement floor and found them to be severely contaminated. Following this disclosure, Defendant instructed Tighe and Bond to stop its activities and refused to pay for its work.

On January 13, 2012, over two months after the explosion, Loud again confirmed, this time in writing, that Defendant would pay for Plaintiffs' losses. At that point, however, Defendant had still not done so, nor had it taken any other action to aid Plaintiffs.

In late January 2012, Plaintiffs continued to smell fumes in their home. In the absence of assistance from Defendant, Plaintiffs contacted Jack Jemsek, a Massachusetts Licensed Site Professional. On January 25, 2012, Jemsek tested the air in the residence and found that it posed an imminent threat to Plaintiffs' health. Jemsek then told Plaintiffs to vacate the residence and reported the situation to the Massachusetts Department of Environmental Protection. As a result, Plaintiffs moved back to a hotel, and on February 2, 2012, the Department of Environmental Protection issued a "Notice of Noncompliance" to Plaintiffs

and Alves Fuels.

Meanwhile, on January 27, 2012, Plaintiffs' counsel wrote to Defendant, pursuant to Mass. Gen. Laws ch. 93A, § 9(3), demanding relief for its unfair business practices and seeking confirmation that Defendant would cover the damages. Defendant failed to respond to this 93A letter. On February 8, 2012, Defendant stated that it would continue its investigation into the matter.

A few days later, Defendant met with Plaintiffs at their residence to review the list of damaged items. According to Plaintiffs, Defendant's representative challenged, threatened, and verbally abused Plaintiffs until they were obliged to ask him to leave. On March 2, 2012, Plaintiffs submitted another itemized statement of costs and damages to Defendant.

D.  Litigation

On March 20, 2012, Defendant's counsel requested that Plaintiffs sit, at a mutually agreeable time, for an examination under oath. At that point, Defendant had not provided any reimbursement to Plaintiffs, nor had it taken any steps to abate the damage at the residence. Defendant, however, had <u>not</u> indicated that it was, in any specific way, contesting coverage and/or the amount of loss.

As a result of Defendant's inaction, six days later, Plaintiffs filed this suit alleging: (I) breach of contract;

(II) a violation of the implied covenant of good faith and fair dealing; and (III) a violation of Mass. Gen. Laws ch. 93A. In their complaint, Plaintiffs also included a fourth count seeking a declaratory judgment that Defendant was obligated to provide coverage for Plaintiffs' personal property, reasonable costs, and attorney's fees.

On May 29, 2012, Defendant sent Plaintiffs a letter informing them that it was continuing to investigate its obligations under the first-party coverage provisions of the policy. However, with respect to the "liability and medical payments to others" provision of the policy, Defendant stated, "Please know that your policy contains a pollution exclusion that was in place at the time of this occurrence. Therefore, [Defendant] is unable to provide you with any coverage for this loss." (Dkt. No. 21, Ex. 6.)

On June 8, 2012, Defendant scheduled an examination under oath for June 21, 2012. Plaintiffs' counsel informed Defendant that Plaintiffs were unavailable at that time. Plaintiffs' counsel also requested, to save resources, that the examinations occur simultaneously with the depositions of Plaintiffs in this case. Despite explicit knowledge that Plaintiffs were not able to attend their examination on June 21, 2012, Defendant, without notifying Plaintiffs, convened a pro forma examination on June 21, 2012, at which Plaintiffs were not present.

Less than a week later, on June 27, 2012, the parties appeared for a scheduling conference in front of Magistrate Judge Kenneth P. Neiman. Plaintiffs' counsel argued that Defendant should simultaneously hold the depositions and examinations under oath. The court, however, denied that request. (Dkt. No. 8.) As a result, Defendant conducted the examinations under oath of Mr. Santos on July 17, 2012, and Mrs. Santos on July 19, 2012. Defendant has not raised any objection respecting the adequacy of Plaintiffs' answers or their conduct at the examinations.

On September 25, 2012, more than ten months after the explosion, Defendant finally made some payments to Plaintiffs under the Personal Property and Additional Living Expense provisions of the policy. Then on October 19, 2012, Defendant provided some funds under the Residence Coverage provision. When Defendant made these payments, it included a reference to policy language that required Plaintiffs, if they disagreed with the amount of loss, to refer the matter to a three-member board of referees. Defendant did not, however, specifically indicate that it was contesting any loss claim; rather, it informed Plaintiffs that it was continuing to investigate the matter. Subsequently, Plaintiffs cashed the checks.

In February 2013, Defendant filed its first Motion for Summary Judgment, arguing that Plaintiffs had failed to

refer the dispute over the amount of loss to a panel of referees and therefore were barred from bringing suit. (Dkt. No. 18.) The court denied that motion without prejudice, but stayed the case pending a referral. (Dkt. No. 28.) That panel commenced its review on June 24, 2013, and found the total amount of loss to be $68,358.31.[2]

On October 25, 2013, Defendant, still relying on the theory that Plaintiffs had failed to refer their claim to a three-member panel, filed its Second Motion for Summary Judgment. (Dkt. No. 41.) At oral argument, Defendant also insisted that summary judgment was appropriate because Plaintiffs failed to be examined under oath -- a point for which the court requested supplemental briefing. (Dkt. No. 43.) The matter was then taken under advisement.

### III. DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled

---

[2] Though the amount of loss may be under $75,000, the court maintains diversity jurisdiction over the case. First, Plaintiffs have asserted a colorable claim for treble damages under Mass. Gen. Laws ch. 93A, a potential award that can be included in calculating the amount in controversy. See, e.g., Youtsey v. Avibank Mfg., Inc., 734 F. Supp. 2d 230 (D. Mass. 2010); F.C.I. Realty Trust v. AETNA Cas. & Sur. Co., 906 F. Supp. 30 (D. Mass. 1995). Second, the amount in controversy is examined by looking at the facts at the time the complaint was filed -- a potential amount Plaintiffs reasonably established to be above $75,000. See Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001)(citation omitted).

-9-

to judgment as a matter of law.  Fed. R. Civ. P. 56(a).
Critically in this case, the court must view the facts in
the light most favorable to the non-moving party, drawing
all reasonable inferences from those facts in that party's
favor.  Pac. Ins. Co., Ltd. v. Eaton Vance Mgmt., 369 F.3d
584, 588 (1st Cir. 2004).  In the absence of a dispute over
a genuine issue of material fact, summary judgment is
appropriate.  Reich v. John Alden Life Ins. Co., 126 F.3d 1
(1st Cir. 1997).

Defendant argues that it is entitled to summary
judgment based on two theories.  First, Plaintiffs failed to
refer the dispute over the amount of loss to a board of
referees as required under the policy.  Second, Plaintiffs
failed to sit for an examination under oath.  For the
reasons discussed below, neither argument comes within
shouting distance of being persuasive.

A.   Referral Under ch. 175, § 99, and Waiver

The referral procedure at issue in the policy has its
genesis in Mass. Gen. Laws ch. 175, § 99.  That section
provides the standard language -- disturbingly anachronistic
-- for insurance companies to use.  It states, "In the case
of loss under this policy and a failure of the parties to
agree as to the amount of loss, it is mutually agreed that

the amount of such loss shall be referred to three disinterested men [sic]." Mass. Gen. Laws ch. 175, § 99. The Supreme Judicial Court has interpreted this requirement, "unless waived by the parties, [to be] a condition precedent to recovery upon the policies, if the parties failed to agree upon the amount of loss." Molea v. Aetna Ins. Co., 326 Mass. 542, 544 (1950); see also Emp'rs' Liab. Assurance Corp., Ltd. v. Traynor, 354 Mass. 763 (1968).

Defendant's contention is relatively simple: this language was in the policy, and Plaintiffs, before bringing suit, failed to refer the matter to a three-person board of referees. They once more failed to refer the matter after Defendant made a partial payment.

Though the referral language is a condition precedent to suit, controlling authority makes it clear that the obligation is not sacrosanct. The First Circuit, in McCord v. Horace Mann Insurance Company, 390 F.3d 138 (1st Cir. 2004), noted that an insurer could waive the provision. Though the McCord court did not find waiver in that specific case, it still affirmatively cited cases where "an absence of evidence that the insurer disputed the amount of loss" indicated waiver. Id. at 144, citing, Goodman v. Quaker City Fire & Marine Ins. Co., 241 F.2d 432, 436 (1st Cir. 1957); Moran v. Phoenix Ins. Co., 7 Mass. App. Ct. 822 (1979). Indeed, as Massachusetts' courts have recognized,

"the right to reference, like the right to arbitration, may be found to have been waived by the failure to properly and timely assert the right." Anthony v. Amica Mut. Ins. Co., 10 Mass. L. Rptr. 256, 1999 WL 513958 at *2 (Mass. Super. May 13, 1999). The waiver need not be explicit, Moran v. Phoenix Ins. Co., 7 Mass. App. Ct. 822 (1979), and the burden of proving waiver is on the party seeking to rely upon it. McCord, 390 F.3d at 143.

Here, Plaintiffs have presented undisputed evidence that Defendant did not contest the amount of loss until well after this suit was filed on March 26, 2012. The first indication that Defendant *may* have been contesting the issue occurred on March 20, 2012, when it requested that Plaintiffs be examined under oath. Even then, however, Defendant did not indicate that it would be disputing Plaintiffs' stated amount of loss, despite the fact that it had enjoyed more than four months to conduct an investigation.

It was not until May 29, 2012, <u>after</u> Plaintiffs filed this suit, that Defendant formally told Plaintiffs that it was disputing some liability. Even at this time, however, Defendant offered no explicit objection to the stated amount of loss and noted that it was continuing to investigate its liability under the first-party coverage provisions of the policy. (Dkt. No. 42, Ex. 11.)

It was not until September 2012, six months later, that Defendant impliedly contested the amount of loss when it paid over funds that were less than the amount Plaintiffs claimed. Even at this time, though, Defendant stated that it was still conducting an investigation into the matter and that the payment was not final. (Dkt. No. 42, Ex. 12.) Critically, no evidence in this record suggests that Defendant objected to Plaintiffs' stated amount of loss prior to that time.

Given these facts, Defendant's argument amounts to a claim that the complaint should be dismissed because Plaintiffs failed to anticipate a dispute over the amount of loss that Defendant itself said nothing about. In failing to object to the amount of Plaintiffs' claim in a reasonable period of time after it was submitted -- or even in a reasonable period of time after this suit was filed -- Defendant's inaction implicitly waived the referral requirement, rendering dismissal inappropriate. See, e.g., Fall River v. Aetna Ins. Co., 219 Mass. 454, 458 (1914); Lancaster v. Gen. Accident Ins. Co. of Amer., 32 Mass. App. Ct. 925, 926 (1992); Moran, 7 Mass. App. Ct. at 824-25.

If it gave credit to Defendant's argument, the court would be saying that any policyholder making a claim against an insurance company would be required to invoke the three-member review procedure whenever a dispute over the amount

of loss was hypothetically possible at some future point, or risk dismissal of any claim. Prudent policy holders would be required to request the referral in every case, and clever insurers would be rewarded for folding their arms and keeping mum about their intentions, as Defendant did for nearly a year here. This is not the law.

The other problem with Defendant's position is that it sweeps too broadly. Only two of Plaintiffs' claims even relate to the amount of loss -- the breach of contract claim and the request for a declaratory judgment. The theory of this case, however, is more fundamentally about the unlawful and abusive process Defendant imposed on Plaintiffs once they submitted a claim -- essentially that it left two of its policyholders, people of very modest means, twisting in the wind while it dithered about the amount of the loss and made inconsistent statements about whether it would provide coverage at all. This portion of the complaint, offered primarily under Ch. 93A, would proceed regardless of the amount of loss. At a minimum then, summary judgment as to the entire complaint would be inappropriate.

As a legal matter, Defendant waived the requirement that Plaintiffs refer the matter to a panel of referees before filing suit. As a practical matter, that referral has also now taken place in any event, and the case can continue to move forward.

B.  **Examinations Under Oath**

Defendant's second theory, one presented at oral argument and pursued in supplemental memoranda, is that Plaintiffs failed to subject themselves to examinations under oath as required by the insurance policy. It is undisputed that "submission to an examination, if the request is reasonable, is strictly construed as a condition precedent to the insurer's liability." Mello v. Hingham Mut. Fire Ins. Co., 421 Mass. 333, 337 (1995).

In this case, Defendant asserts, Plaintiffs failed to submit to an examination before they filed suit, despite a request by Defendant on March 20, 2012. Plaintiffs, according to Defendant, failed to attend the examination on the June 21, 2012, date Defendant arranged. Both failures, Defendant insists, represent a breach of a condition precedent to suit, requiring dismissal of this case. At best, the argument runs, Plaintiffs can re-file their case following dismissal.

This argument is peculiar. Defendant does not dispute that it provided Plaintiffs the opportunity to be examined at a "mutually convenient date," (Dkt. No. 41, Ex. 3), and that Plaintiffs notified it that the first date was inconvenient. Moreover, Defendant does not dispute that Plaintiffs did indeed sit for the examinations in July 2012.

Given these undisputed facts, two interrelated points resolve the issue. First, the examination under oath is a condition for liability, not a bar to suit. See Mello, 421 Mass. at 336. The court is not aware of a case that requires the examination to occur before suit is filed. In fact, it appears to only serve as a final bar to liability where the examination does not occur before trial, or where the plaintiff refuses to cooperate during the examination itself. See, e.g., Id. at 336.

With that as a baseline, taking Defendant's version of events as true, the record undisputedly illustrates that the requirement was complied with fully on July 17 and 19, 2012. Notably, Defendant does not contend that Plaintiffs were evasive at the examinations, or that they failed to cooperate in good faith. Contra Hanover Ins. Co. v. Cape Cod Custom Home Theater, Inc., 72 Mass. App. Ct. 331 (2008)(finding that the requirement was not satisfied where the plaintiff refused to answer questions, withheld relevant documents, and subsequently walked out of the examination). Under the circumstances here, no bar to liability emerges, and the case can move forward.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Second Motion for Summary Judgment (Dkt. No. 41) and Defendant's Supplemental Motion for Summary Judgment (Dkt. No. 44) are

hereby DENIED.  Plaintiffs manifestly possess a more than trial-worthy claim.  The clerk will now schedule the case for a final pretrial conference.

It is So Ordered.

                                          <u>/s/ Michael A. Ponsor</u>
                                          MICHAEL A. PONSOR
                                          U. S. District Judge